THE STATE EX REL. KNOWLTON *v.* NOBLE COUNTY BOARD OF

ELECTIONS ET AL.

[Cite as *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*,

125 Ohio St.3d 82, 2010-Ohio-1115.]

*Sheriffs — Qualifications for office — Postsecondary education requirement —*

*R.C. 311.01(B)(9) — Writ of prohibition granted to prevent candidacy.*

(No. 2010-0375 — Submitted March 18, 2010 — Decided March 23, 2010.)

IN MANDAMUS AND PROHIBITION.

_____

**Per Curiam.**

{¶1 } This is an expedited election action for writs of mandamus and prohibition to prevent respondents, the Noble County Board of Elections and its members, from placing Stephen S. Hannum's name on the ballot as a candidate for the office of Noble County sheriff in the May 4, 2010 Democratic Party primary election. Because the board of elections abused its discretion and clearly disregarded R.C. 311.01(B) and relator lacks an adequate remedy in the ordinary course of law, we grant the writ of prohibition. We dismiss the mandamus claim for lack of jurisdiction.

**Facts**

{¶2 } On May 22, 2009, pursuant to R.C. 305.02, Stephen S. Hannum was appointed Noble County sheriff after former sheriff Landon Smith resigned. The interim appointment became permanent in June. Smith subsequently pleaded guilty to having an unlawful interest in a public contract, a felony of the fourth degree, and having a conflict of interest, a misdemeanor of the first degree.

{¶3 } On January 25, 2010, Hannum filed his declaration of candidacy and nominating petition for the May 4, 2010 Democratic Party primary election

for the office of Noble County sheriff. Four days later, on January 29, relator, Denny R. Knowlton Jr., a registered Democrat and Noble County resident, filed a protest pursuant to R.C. 3513.05 to prevent the board of elections and its members from placing Hannum's name on the primary-election ballot because he did not meet the qualifications set forth in R.C. 311.01(B)(9) to be an eligible candidate for sheriff. Knowlton is the other candidate for the Democratic Party nomination for sheriff.

{¶4 } On February 22, the board held a hearing on Knowlton's protest. At the hearing, Hannum conceded that he had not served as a peace officer at the rank of corporal or above for the requisite period of time, and former sheriff Smith testified that Hannum had never attained the rank of corporal or above during his employment with the sheriff's office before being appointed sheriff in May 2009.

{¶5 } Hannum also submitted two uncertified copies of his academic record from Washington State Community College in Marietta, Ohio. The transcripts are dated January 26, 2010, and February 22, 2010, and indicate that Hannum had earned a total of 92 credits, including three for a life-experience portfolio and the remaining 89 credits for life experience. Life-experience credits are awarded for life experience rather than for traditional classes, and Hannum received a grade of "L" for these courses. Twenty-nine of these 89 life-experience credits are for "OPOTA I," "OPOTA II," and "OPOTA III." Knowlton claims that these credits are for Ohio Peace Officer Training Academy ("OPOTA") and that other life-experience credits also appear related to Hannum's employment as a peace officer.

{¶6 } At the hearing, Hannum specified that 72 credit hours at Washington State Community College were equivalent to two years of postsecondary education. In his closing argument, Knowlton asked that the board

2

verify the claimed educational credit and determine whether the credits met the applicable legal requirements.

{¶7 } At the conclusion of the hearing, the board voted unanimously to deny Knowlton's protest against Hannum's candidacy. In a ledger entry of its decision, the board noted that the denial of the protest was based on the information provided by Hannum at the hearing and that Hannum had submitted transcripts to substantiate his educational qualifications.

{¶8 } A week later, on March 1, Knowlton filed this action for writs of mandamus and prohibition to prevent the board and its members from certifying Hannum's candidacy for the Democratic Party nomination for the office of Noble County sheriff and placing his name on the May 4, 2010 primary-election ballot. The board and its members filed an answer, and the parties submitted briefs and evidence pursuant to the expedited schedule for election cases in S.Ct.Prac.R. 10.9.

{¶9 } This cause is now before the court for our consideration of the merits.

## Legal Analysis

### Laches

{¶10 } "We have consistently required relators in election cases to act with the utmost diligence." *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19. "If relators in election cases do not exercise the utmost diligence, laches may bar an action for extraordinary relief." *State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 11. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277.

{¶11 } The board of elections asserts that Knowlton's claims are barred by laches because he could have objected to Hannum's qualifications to be sheriff after Hannum was appointed. The board's argument lacks merit. Knowlton is challenging Hannum's right to be a candidate for sheriff at the May 4, 2010 primary election. He filed his protest only *four days* after Hannum filed his declaration of candidacy and petition for his nomination at the primary election. A protest pursuant to R.C. 3513.05 would have been premature before Hannum filed his declaration of candidacy and nominating petition. Nor is Hannum's delay of *seven days* from the date the board denied his protest to file this case unreasonable. Cf. *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724 N.E.2d 775 ("we have held that a delay as brief as *nine days* can preclude our consideration of the merits of an expedited election case" [emphasis sic]). And any minimal delay by Knowlton in filing this action did not prejudice the board and its members because even if Knowlton had filed this action the same day as the board's decision, this case would still have been an expedited election case. *Craig*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 15.

{¶12 } Therefore, laches does not bar Knowlton's claims.

*Mandamus*

{¶13 } Knowlton initially requests a writ of mandamus to compel the board and its members to sustain his protest against Hannum's candidacy for sheriff.

{¶14 } "It is axiomatic that 'if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction.' " *State ex rel. Obojski v. Perciak*, 113 Ohio St.3d 486, 2007-Ohio-2453, 866 N.E.2d 1070, ¶ 13, quoting *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d

704. "We have applied this jurisdictional rule to expedited election cases by examining the complaint to determine whether it actually seeks to prevent, rather than compel, official action." *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 20.

{¶15 } Although some of the allegations and requests contained in Knowlton's complaint are couched in terms of compelling affirmative duties, it is apparent that he actually seeks (1) a declaratory judgment that the board's denial of his protest was improper and (2) a prohibitory injunction preventing Hannum from appearing on the primary-election ballot. In fact, in his complaint, Knowlton claims that he is entitled to the writ "to prevent Respondents from placing Stephen S. Hannum's name on the ballot as a candidate for the office of Noble County Sheriff at the May 4, 2010 primary election." The relief sought by Knowlton is thus comparable to that sought by relators in other election cases in which we held that we lacked jurisdiction over mandamus claims to remove candidates' names from the ballot. See generally *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 14, and cases cited therein.

{¶16 } Therefore, because Knowlton seeks relief in the nature of declaratory judgment and prohibitory injunction, we lack jurisdiction to consider his mandamus claim and dismiss it. Id. at ¶ 15; *Evans*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 19.

*Prohibition*

{¶17 } Knowlton alternately requests a writ of prohibition to prevent the board of elections and its members from certifying Hannum's candidacy for the Democratic Party nomination for the office of Noble County sheriff and placing his name on the May 4, 2010 primary-election ballot. To be entitled to the writ, Knowlton must establish that (1) the board of elections and its members are about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by

law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 28.

{¶18 } Knowlton has established the first and third requirements for the writ. The board of elections exercised quasi-judicial authority by denying his protest after conducting a hearing required by statute that included sworn testimony. *Reese*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, at ¶ 17. He also lacks an adequate remedy in the ordinary course of law, given the proximity of the May 4 primary election. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 28.

{¶19 } For the remaining requirement of the exercise of unauthorized power, "we must determine whether the board acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law." *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 23. Knowlton claims that the board abused its discretion and clearly disregarded R.C. 311.01(B)(9) in denying his protest to Hannum's candidacy. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

{¶20 } R.C. 311.01(B) provides:

{¶21 } "[N]o person is eligible to be a candidate for sheriff * * * unless that person meets all of the following requirements:

{¶22 } "* * *

{¶23 } "(9) The person meets at least one of the following conditions:

{¶24 } "(a) Has at least two years of supervisory experience as a peace officer at the rank of corporal or above, or has been appointed pursuant to section 5503.01 [referring to the State Highway Patrol] of the Revised Code and served at

the rank of sergeant or above, in the five-year period ending immediately prior to the qualification date;

{¶25 } "(b) Has completed satisfactorily at least two years of post-secondary education or the equivalent in semester or quarter hours in a college or university authorized to confer degrees by the Ohio board of regents or the comparable agency of another state in which the college or university is located or in a school that holds a certificate of registration issued by the state board of career colleges and schools under Chapter 3332. of the Revised Code."

{¶26 } "A candidate for sheriff can satisfy R.C. 311.01(B)(9) in one of the following ways:  (1) have at least two years of supervisory experience as a peace officer at the rank of corporal or above in the five-year period immediately before the qualification date, (2) be appointed to the Highway Patrol under R.C. 5503.01 and serve at the rank of sergeant or above in the five-year period ending immediately before the qualification date, or (3) satisfactorily complete at least two years of qualifying postsecondary education or the equivalent." *Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 44.

{¶27 } Hannum was never appointed to the Highway Patrol, but at the hearing, he claimed to satisfy both of the other two alternatives specified in R.C. 311.01(B)(9).

{¶28 } For the requirement of supervisory experience as a peace officer, "[u]nder the language used in the pertinent portion of R.C. 311.01(B)(9)(a), in order to be eligible to be a candidate for sheriff, the person must, within the five-year period, have two years of supervisory experience *and that supervisory experience must have been earned when the person served as a peace officer at the rank of corporal or above*."  (Emphasis added.)  *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 184, 724 N.E.2d 771;

*State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 22.

{¶29 } Like the prospective sheriff's candidates in *Wolfe* and *Craig*, Hannum did not serve as a peace officer at the rank of corporal or above for the required two years during the pertinent period. The former Noble County sheriff confirmed this fact, and the board of elections and its members conceded it in their answer. Therefore, Hannum did not satisfy the supervisory-experience requirement of R.C. 311.01(B)(9)(a).

{¶30 } For the postsecondary-education requirement of R.C. 311.01(B)(9)(b), Knowlton claims that Hannum had not completed "at least two years of post-secondary education or the equivalent in semester or quarter hours in a college or university authorized to confer degrees" to be eligible to be a candidate for sheriff.

{¶31 } In *State ex rel. Wellington v. Mahoning Cty. Bd. of Elections*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641, ¶ 30, we held that "under the plain language of R.C. 311.01(B)(9)(b), as read in the context of the entire statute, *peace officer training is not acceptable to constitute course credit under R.C. 311.01(B)(9)(b)*, because it is already included in the eligibility requirements in R.C. 311.01(B)(8)." (Emphasis added.) We reasoned that "R.C. 311.01(B)(8) already specifies that peace officer training is a distinct requirement, along with specified employment. To be eligible to be a candidate for sheriff, one must obtain the certificate of peace officer training (or a certificate of training pursuant to R.C. 5503.05) and have employment either as a peace officer or with the highway patrol as specified under R.C. 311.01(B)(8)(a) or as a law-enforcement officer under R.C. 311.01(B)(8)(b). *The postsecondary education needed under R.C. 311.01(B)(9)(b) is altogether distinct from the peace officer training specified in R.C. 311.01(B)(8)*. The equivalent of 'at least two years of post-secondary education' specified in R.C. 311.01(B)(9) is to be 'semester or quarter

hours in a college or university authorized to confer degrees.' " (Emphasis added.) Id.

{¶32 } Notwithstanding the board's suggestions to the contrary, the evidence before the board at the protest hearing supports the conclusion that Hannum has double-counted credits earned for peace-officer training contrary to our decision in *Wellington*. The OPOTA courses specified on the transcripts that Hannum submitted refer to courses he has taken at the Ohio Peace Officer Training Academy. In fact, the board and its members do not claim that "OPOTA" refers to anything other than academy courses. These courses are manifestly for "peace officer training," which, according to *Wellington*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641, at ¶ 30, do not constitute course credit that can satisfy the R.C. 311.01(B)(9)(b) postsecondary-education requirement.

{¶33 } Therefore, because 29 credits that Hannum earned were for peace-officer training, they could not be counted toward the postsecondary-education requirement of R.C. 311.01(B)(9)(b). Furthermore, any other "life-experience" credits related to his job as a peace officer were also ineligible for credit under R.C. 311.01(B)(9)(b) because R.C. 311.01(B)(8) already accounts for Hannum's employment as a peace officer. A contrary holding would render R.C. 311.01(B)(9)(b) superfluous in these circumstances and would permit postsecondary-education credit even though it duplicates other distinct criteria in R.C. 311.01(B) for qualification as a candidate for sheriff. Thus, Hannum earned at most only 63 credits, which, by his own testimony at the protest hearing, is insufficient to satisfy the postsecondary-education requirement of R.C. 311.01(B)(9)(b).

{¶34 } Consequently, the board and its members abused their discretion and clearly disregarded R.C. 311.01(B)(9) by denying Knowlton's protest and certifying Hannum's candidacy for sheriff at the May 4 primary election because

Hannum did not satisfy any of the three categories in that subsection. Knowlton is thus entitled to the requested extraordinary relief in prohibition. Although we have a "duty to liberally construe the statutory limitations on the right to be an eligible candidate for sheriff in order to permit electors to choose from all qualified candidates, the court cannot liberally construe a statute with an unequivocal and definite meaning." *Wellington*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 48.

### Conclusion

{¶35 } Based on the foregoing, Knowlton has established his entitlement to the requested extraordinary relief in prohibition. Therefore, we grant a writ of prohibition to prevent the board and its members from placing the name of Stephen S. Hannum on the ballot as a candidate for the Democratic Party nomination for Noble County sheriff at the May 4, 2010 primary election. We also dismiss Knowlton's mandamus claim for lack of jurisdiction.

Judgment accordingly.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

MOYER, C.J., and CUPP, J., concur in the dismissal of the mandamus claim but dissent from the grant of the writ of prohibition.

PFEIFER, J., concurs in part and dissents in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶36 } I concur in the dismissal of the mandamus claim but dissent from the judgment granting the writ of prohibition to prevent Hannum from appearing as candidate for the Democratic Party nomination for Noble County sheriff at the May 4, 2010 primary election.

{¶37 } The majority errs in relying on *State ex rel. Wellington v. Mahoning Cty. Bd. of Elections*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897

N.E.2d 641, to hold that the board of elections abused its discretion in concluding that Hannum satisfied the postsecondary-education requirement of R.C. 311.01(B)(9)(b). I dissented in *Wellington* and continue to believe that the majority therein read "additional requirements into a statute already designed to thwart competition." Id. at ¶ 34 (Pfeifer, J., dissenting). Moreover, for the following reasons, *Wellington* is distinguishable, and Knowlton's arguments lack merit.

{¶38 } Knowlton argues that the board and its members erred in determining that Hannum satisfied the postsecondary-education requirement. Knowlton's claims, however, are largely based on supposition, not evidence, and they are insufficient to establish that the board of elections abused its discretion. First, no evidence was submitted before the board of elections that the transcript notations for "OPOTA I," "OPOTA II," and "OPOTA III" necessarily referred to peace-officer training courses. Knowlton relies on *Wellington*, 120 Ohio St.3d 198, 2008-Ohio-5510, 897 N.E.2d 641, in which this court held that the prospective sheriff's candidate had not met the R.C. 311.01(B)(9)(b) requirement. But that case is distinguishable because the prospective sheriff's candidate in *Wellington* had conceded that some of the credit claimed by him was for "law-enforcement-certification courses at the Ohio Peace Officer Training Academy." Id. at ¶ 7. Here, there is no comparable concession that the courses are "law-enforcement-certification courses" or are for peace-officer training at the academy. Although Knowlton attempted to introduce evidence to support this argument, he did not, and "a claim that the board of elections abused its discretion * * * could not be based on evidence that was never presented to it." *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 40.

{¶39 } Second, no evidence was submitted to the board of elections at the protest hearing that an additional 20 credits on Hannum's transcript relating to

courses referred to as "CRJU" courses should not be counted toward his satisfaction of the postsecondary-education requirement of R.C. 311.01(B)(9)(b) because they were actually OPOTA courses. The statute contains no prohibition against the use of life-experience credit.

{¶40 } Finally, credible evidence was submitted at the protest hearing to establish that Hannum earned sufficient credits before the February 18, 2010 qualification date. The January 26, 2010 Washington State Community College transcript that Hannum presented at the protest hearing includes a notation that 89 credits from the winter quarter are "ERN," which the board could have reasonably inferred meant earned. Hannum also testified at the hearing that he "had documentation" that his "college credits had been assigned to [him] on January 26." Insofar as the evidence could be considered conflicting on this point, "[w]e will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue." *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 185, 724 N.E.2d 771.

{¶41 } Noble County is small; it has a population of just over 14,000. http://www.epodunk.com/cgi-bin/genInfo.php?locIndex=17252. It is probably safe to assume that every voting-age person in the county is aware of who is running for sheriff. I know it is safe to assume that collectively the voters of Noble County are competent to decide who should be their sheriff.

{¶42 } Finally, this court has many times stated that it avoids construing statutes that lead to illogical or absurd results. *State ex rel. Haines v. Rhodes* (1958), 168 Ohio St. 165, 5 O.O.2d 467, 151 N.E.2d 716, paragraph two of the syllabus; *In re T.R.*, 120 Ohio St.3d 136, 2008-Ohio-5219, 896 N.E.2d 1003, ¶ 16. Hannum is currently the sheriff of Noble County. By the time the next elected sheriff takes office, Hannum will have been the sheriff for almost two years. But today this court concludes that the Noble County Board of Elections abused its discretion when it certified Hannum's candidacy for sheriff. This court

concludes that a man who has been sheriff since May 2009 is unqualified to be a candidate for sheriff. How is that not an absurd result?

**{¶43 }** I conclude that Knowlton failed to establish that the board of elections abused its discretion or clearly disregarded applicable law in determining that Hannum had met the requirements of R.C. 311.01(B)(9). I would deny the writ of prohibition. Because the majority erroneously extends Wellington's beef to Knowlton's and thereby precludes the Noble County electorate from the opportunity to reelect their current sheriff, I dissent.

_____

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, for relator.

Patrick J. Piccininni, Special Counsel to Clifford N. Sickler, Noble County Prosecuting Attorney, for respondents.

_____